IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MONROE IBRY, III, )<br>)<br>Plaintiff-Appellant, )<br>)<br>v. )<br>)<br>F & S AUTO SALES, LLC, and )<br>MICHAEL JONES, )<br>)<br>Defendants-Appellees. ) | CASE NO. 1:14-CV-928-WKW<br>[WO] |

## MEMORANDUM OPINION AND ORDER

Monroe Irby, III, appeals the order of the United States Bankruptcy Court for the Middle District of Alabama in Adversary Proceeding No. 14-03025-DHW, which set aside entry of default and granted judgment in favor of Defendants-Appellees F & S Auto Sales, LLC ("F & S"), and Michael Jones (collectively, "Defendants"). (Doc. # 2-12.) Mr. Irby's timely appeal of the order and judgment has been fully briefed. (Docs. # 14, 15, 16.) Upon consideration of the parties' arguments, the record, the Bankruptcy Court's reasoned decisions, and the relevant law, the court concludes that the order setting aside entry of default and granting

judgment in favor of Defendants is due to be affirmed in part and vacated and remanded in part.[1]

## I. JURISDICTION AND VENUE

This court has subject-matter jurisdiction to hear appeals from orders of the Bankruptcy Court. 28 U.S.C. § 158(a). Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." *Id.* Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and its legal conclusions and any mixed questions of law and fact are reviewed *de novo*. *Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007); *Christopher v. Cox (In re Cox)*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007). A finding of fact "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation, internal quotation marks, and alterations omitted).

---

[1] All references to page numbers in this opinion are to those assigned by CM/ECF in the instant proceeding as opposed to the page numbers generated by the parties or by CM/ECF in the underlying Bankruptcy proceeding.

### III. BACKGROUND

Mr. Irby filed a voluntary Chapter 13 petition on February 14, 2013. Pursuant to this petition, a notice of bankruptcy was sent to all of Mr. Irby's known creditors, including F & S.[2] On October 22, 2013, F & S filed an untimely proof of claim with the Bankruptcy Court in the amount of $15,925.13. Notwithstanding Mr. Irby's bankruptcy and F & S's pending claim, Mr. Irby alleges that F & S – through its owner, Michael Jones – repossessed the vehicle on February 11, 2014, in violation of 11 U.S.C. §§ 362(a)(3)-(6), which prohibits creditors from taking certain actions against a debtor or the property of a debtor-estate.

In light of Defendants' actions, Mr. Irby filed the underlying adversary proceeding with the Bankruptcy Court on February 17, 2014. Neither Defendant timely answered or otherwise responded to the complaint, and on April 1, 2014, Mr. Irby requested an entry of default. That same day, but before the Clerk entered defaults against Defendants, Defendants filed a motion to set aside the request for entry of default and to allow for the filing of untimely answers, as well as a motion to dismiss the adversary proceeding.

The Bankruptcy Court held a hearing on Defendants' motions on April 28, 2014. At the conclusion of the hearing, the Bankruptcy Court denied Mr. Irby's

---

[2] Mr. Irby financed the purchase of a 2008 Ford Expedition through F & S, but failed to keep his payments current during 2012 and 2013.

3

request for entry of default in light of Defendants' repeated efforts to obtain counsel.  The Bankruptcy Court also denied Defendants' motion to dismiss and set the case for a "trial on the merits" on June 9, 2014.  (Doc. # 11-2, at 12.)  The next day, the Bankruptcy Court entered three orders confirming the previous day's oral determinations.  (Docs. # 2-6, 2-7, 2-8.)

When the Bankruptcy Court denied Defendants' motion to dismiss, the clock began to run on Defendants' time to answer Mr. Irby's complaint.  Pursuant to Federal Rule of Bankruptcy Procedure 7012(a)(1), Defendants had fourteen days to file their answer from notice of the Bankruptcy Court's decision denying their motion to dismiss.  This deadline passed with no answer from Defendants, so on Friday, May 16, 2014, Mr. Irby filed a renewed request for entry of default.

At 7:07 a.m. the following Monday – before the Clerk acted on Mr. Irby's renewed request for entry of default – Defendants electronically filed their answer to Mr. Irby's complaint.  At 11:12 a.m. that same day, however, the Clerk of the Bankruptcy Court entered defaults against both Defendants.  No further filings or court orders were entered from that point forward, and on June 9, 2014, both parties appeared before the Bankruptcy Court for the previously scheduled hearing.

At the beginning of the hearing, the Bankruptcy Court engaged in discussions to determine the status of the case's procedural posture and initially indicated its belief that the Clerk's entry of default had solidified Mr. Irby as the

4

prevailing party and that the present hearing was limited to the issue of damages. (Doc. # 11-1, at 13) ("They won. . . . [Plaintiff] filed a complaint alleging a wilful violation of the stay.  There was no response.  There was a default judgment entered.  So this is a damage hearing only on the issue.").  Counsel for Defendants, however, quickly pointed out his belief that the previous entry of default (the one requested on April 1, not the one requested on May 16) had been set aside at the April 28, 2014 hearing and that the parties were present to begin a trial on the merits. (Doc. # 11-1, at 14.)

Counsel for Mr. Irby then countered with a summary of the most recent actions taken in the case, namely Defendants' failure to answer within fourteen days of the court's denial of the motion to dismiss, Mr. Irby's renewed motion for entry of default, and the Clerk's entry of default on May 19, 2014. (Doc. # 11-1, at 15.)  Counsel for Defendants then added that an answer was filed the Monday immediately following Mr. Irby's filing of the renewed motion for entry of default because the preceding court orders did not specify a time to answer. (Doc. # 11-1, at 16.)  With this recitation of the facts, the Bankruptcy Court explained that he would consider the recent filings, but wanted to go ahead with the proceeding and should Mr. Irby prevail, the issue of attorney's fees would be on the table.  The hearing proceeded with the entry of default in place.

As the trial proceeded, Mr. Irby more fully explained his claim. Through direct and cross examination of three witnesses – Mr. Irby, Geraldine Irby,[3] and Mr. Jones – Mr. Irby alleged that Mr. Jones called his mother on February 3, 2014, and requested that she have Mr. Irby bring the vehicle to her house for Mr. Jones to reclaim. Mr. Irby contended that his mother complied with Mr. Jones's request because Mr. Jones told her that he had papers allowing for such repossession. Geraldine Irby confirmed Mr. Irby's account for the most part, but did explain that Mr. Jones never said he had "repossession" papers. Instead, she testified that Mr. Jones asserted that he had court papers which allowed for the release of the vehicle.

When Mr. Jones took the stand, he offered a markedly different version of events. He explained that he had spoken with Geraldine Irby on February 3, 2014, but that the conversation was initiated for social reasons and only began to focus on Mr. Irby's vehicle when Geraldine Irby asked whether her son was keeping up with his payments. Mr. Jones alleged that, upon learning that her son was not paying for his truck, Geraldine Irby voiced her dissatisfaction with her son's missed payments and told Mr. Jones that she "taught all of her children to do the right thing and if he [is not] paying . . . for your truck," she would "have him bring it back." (Doc. # 11-1, at 47.)

---

[3] Geraldine Irby is Mr. Irby's mother and a long-time family friend of Mr. Jones.

Mr. Jones then noted that, after one week passed, he received a call from Geraldine Irby in which she explained that she had spoken with Mr. Irby and he was going to bring his car by her place and leave it for Mr. Jones to pick up. Mr. Jones informed Geraldine Irby that he was alone at the car lot and would not be able to pick up the vehicle. Mr. Irby then began calling Mr. Jones and eventually communicated that he had left the vehicle at his mother's house, unlocked, with the keys inside and that he wanted to work something out with Mr. Jones.

Mr. Jones testified that, upon receiving this news, he explained to Mr. Irby that the two of them could not work anything out until Mr. Irby's bankruptcy ran its course. According to Mr. Jones, despite hearing this news, Mr. Irby called him back and stated that he no longer wished to be in bankruptcy and that the vehicle was parked outside his mother's house, unlocked, with the keys inside and that he was no longer responsible for what happened to it. Mr. Jones explained that it was only upon this final call from Mr. Irby and realization that the vehicle was not insured that he picked up the vehicle.

Mr. Jones asserted that he never mentioned repossession or court papers to Geraldine Irby and ultimately testified that he knew about the automatic bankruptcy stay and never would have reclaimed the vehicle had Mr. Irby not disclaimed it while it was uninsured. Mr. Jones also noted that, as soon as he was

7

able to hire an attorney, he returned the vehicle to Mr. Irby – 49 days after he first picked it up at Geraldine Irby's house.

At the conclusion of the hearing, the Bankruptcy Court addressed the parties and noted that they had offered "diametrically opposed testimony" and that it would consider the testimony, weigh the credibility of the witnesses, and give a final determination at a hearing the following Tuesday. At the hearing, the Bankruptcy Court first addressed the case's procedural posture, summarizing the earlier events as follows:

> First I want to deal with the issue of default in this case. There was a motion for default that was earlier presented, but before the entry of that default we had a response to that and so default on the first motion never entered.
>
> Then there was no responsive pleading filed within the time still fixed and a default did, in fact, enter there. Maybe we've had a hearing on that. Be that as it may, we've now gone to the merits. I don't think that . . . one day or so in the late filing of the answer would have prejudiced the plaintiff in an inappropriate way. So I'm going to set aside the entry of default and decide this case on its merits.

(Doc. # 11-1, at 63.) The Bankruptcy Court then asked whether there was anything Mr. Irby's counsel wanted to say before it issued the decision. Counsel said they did not, so the Court proceeded with its oral determination.

The Bankruptcy Court explained that all that is required for a creditor to violate the automatic stay is for the creditor, in an effort to collect a pre-petition debt, to undertake an act that violates the stay while having knowledge of the

8

debtor's bankruptcy.  The Bankruptcy Court then noted that there was no dispute that Defendants reclaimed possession of Mr. Irby's vehicle or that Defendants knew of the bankruptcy petition.  Accordingly, the crux of the inquiry was whether the Bankruptcy Judge believed Mr. Irby and concluded that Defendants' possession came from "some sort of guise or pretext" initiated by Defendants, or whether the Bankruptcy Judge believed Mr. Jones and found that Mr. Irby voluntarily surrendered the vehicle.

Reviewing the testimony of all three witnesses, the events leading to the adversary proceeding, and the placement of the burden of proof on Mr. Irby, the Bankruptcy Court ultimately determined that Defendants did not violate the automatic stay.  Specifically, the Bankruptcy Court found that Mr. Jones's actions in picking up the vehicle and returning it to his car lot, while likely not the most prudent course, were not the product of a guise or ruse on his part to violate the automatic stay.  Rather, the Bankruptcy Court indicated that Mr. Jones only came to reclaim the vehicle following Mr. Irby's voluntary surrender.  After issuing its decision, the Bankruptcy Judge asked whether either party had anything further for the court, to which each party replied in the negative.

Approximately two weeks after the Bankruptcy Court entered oral and written rulings in favor of Defendants, Mr. Irby filed a motion to alter, amend, or vacate the judgment, and the Bankruptcy Court set the motion for a hearing.  At the

July 28, 2014 hearing, counsel for Mr. Irby delineated three reasons why the judgment should be vacated and a new trial set. Counsel for Defendants responded to the arguments of Mr. Irby and specifically highlighted the fact that the court had clearly expressed that the June 9, 2014 trial was to be on the merits and that Defendants had filed an answer prior to the entry of default.

After hearing from both sides, the Bankruptcy Court specifically asked Mr. Irby how he was prejudiced by the June 9, 2014 hearing on the merits. Mr. Irby's counsel responded that the Clerk's entry of default necessarily limited the scope of the June 9, 2014 hearing to the issue of damages. Accordingly, he argued that he employed a damages-specific strategy and he would have called additional witnesses and elicited different testimony had he known the hearing was to cover the issue of liability.

After hearing the arguments of both parties, the Bankruptcy Court entered an order the following day, denying Mr. Irby's motion to reconsider. In the order, the Bankruptcy Court admitted that the adversary proceeding had a "procedurally checkered past" but explained that it was not persuaded by Mr. Irby's assertions of prejudice. As grounds, the Bankruptcy Court highlighted the following: (1) that Mr. Irby had been on notice regarding Defendants' dispute as to liability since the filing of their motion to dismiss; (2) that both parties left the April 28, 2014 hearing with a clear understanding that a hearing on the merits was to take place on

June 9, 2014; (3) that Defendants' answer actually preceded the Clerk's entry of default and the answer clearly disputed liability; and (4) that Mr. Irby did not express any contentions regarding unpreparedness throughout the hearing, nor did he move for a continuance.  In sum, the Bankruptcy Court found it unreasonable for Mr. Irby to have assumed that the entry of default by the Clerk following Defendants' answer would have taken the issue of liability off the table and, regardless, such a contention should have been raised during the June 9, 2014 hearing.  In light of the Bankruptcy Court's denial of the motion for reconsideration, Mr. Irby appealed to this court.

## IV.  DISCUSSION

According to Mr. Irby, the Bankruptcy Court erred in three respects.  First, he contends that the Bankruptcy Court applied the incorrect legal standard for determining whether a creditor willfully violated the automatic bankruptcy stay.  Second, and relatedly, Mr. Irby contends that the Bankruptcy Court erred in disregarding evidence showing that Defendants had willfully violated the automatic stay.  Finally, Mr. Irby argues that the Bankruptcy Court improperly entered judgment in favor of Defendants after the Clerk had already entered default and upon the conclusion of an evidentiary hearing that was limited to damages in its scope.  These arguments are addressed in turn.

A.  **The Legal Standard Applied by the Bankruptcy Court**

Under the bankruptcy code, the filing of a bankruptcy petition operates as an automatic stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  As properly recognized by the Bankruptcy Court, there does not have to be any malice, spite, or vindictiveness on the part of the creditor to find that the creditor engaged in a willful violation of the stay.  Rather, a willful violation of § 362(a) will be found when it is determined that a creditor engaged in efforts to collect a pre-petition debt and did so with knowledge of the debtor's bankruptcy.  *See Credit Nation Lending, Servs., LLC v. Nettles*, 489 B.R. 239, 247 (N.D. Ala. 2013).

Mr. Irby contends that, despite initially highlighting the appropriate standard, the Bankruptcy Court found for Defendants because Mr. Irby failed to prove by a preponderance of the evidence that Defendants engaged in a guise or ruse to violate the automatic stay.  Mr. Irby contends that the law requires no such showing.  Further, Mr. Irby contends that the testimony presented at the hearing showed that Defendants knew of his bankruptcy petition and reclaimed the vehicle anyway, directly violating the automatic stay.

12

A close reading of the record, including the transcripts of each hearing held before the Bankruptcy Court, shows that the Bankruptcy Court was *not* stating that it was Mr. Irby's burden to show the existence of a guise or ruse on the part of Mr. Jones in reclaiming the vehicle. While it is possible that a cursory reading of the judgment would allow one to conclude that such an element had been imposed, it is evident when reading the record as a whole that the Bankruptcy Court was merely communicating its determination that Mr. Jones only came to pick up the vehicle because of Mr. Irby's voluntary surrender. More specifically, the judgment evidenced the Bankruptcy Court's determination that the act of voluntarily surrendering the vehicle in effect meant that Defendants had not willfully violated the automatic stay. Accordingly, the question before this court is whether Mr. Irby's actions evidencing his intent to voluntarily surrender the vehicle[4] provide a defense for Defendants for a technical violation of § 362(a)(3).

Section 362(a)(3) specifically prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The parties agree that Defendants knew of Mr. Irby's bankruptcy petition and the corresponding automatic stay. Further, Defendants acknowledge that picking up the vehicle and returning it to the

---

[4] There was sufficient evidence from which the Bankruptcy Court could conclude that Mr. Irby communicated his intent to voluntarily surrender the vehicle. Specifically, the Bankruptcy Court credited the areas of shared testimony between Mr. Jones and Ms. Geraldine Irby, the delay in Mr. Irby's securing of the vehicle, as well as the long-time relationship that existed between the parties.

13

car lot amounts to an act of obtaining possession, as prohibited by § 362(a)(3). While Defendants offer Mr. Irby's actions as grounds for a good faith defense, courts regularly reject creditors' defenses of mistakes, computer problems, and other showings of alleged good faith when assessing the willfulness of violations of the automatic stay or discharge injunction. *See, e.g., Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1556 (11th Cir. 1996) ("We are not persuaded by IRS's attempts to avoid responsibility for its conduct by blaming its computer system for not properly 'freezing' collection activities and blaming Jove for not calling IRS."); *see also C & W Asset Acquisition, LLC v. Feagins (In re Feagins)*, 439 B.R. 165, 176 (Bankr. D. Haw. 2010) (finding willful violation even though creditor had mistaken belief about the legal status of the discharged debt); *Poole v. U.B. Vehicle Leasing, Inc. (In re Poole)*, 242 B.R. 104, 110 (Bankr. N.D. Ga. 1999) (finding conduct intentional even though creditor mistakenly failed to properly note the bankruptcy filing in its records); *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 228 (Bankr. N.D. Ill. 1998) (rejecting contentions that the violation was merely a computer mistake and stating that creditor's size and complexity did not excuse its disregard of the discharge injunction).

Further, while it is common for debtors to choose to surrender collateral in exchange for the release of a creditor's lien, such acts of surrender are planned and

approved by the bankruptcy court to allow for the equitable distribution of a debtor's assets pursuant to 11 U.S.C. § 1325.  Here, Mr. Irby's contentions of surrender were made entirely outside his bankruptcy proceeding.  Accordingly, the vehicle remained part of the bankruptcy estate after Mr. Irby's decision to leave the vehicle unlocked in his mother's driveway.

Additionally, courts routinely place the burden of upholding the protections of the bankruptcy stay on the creditor rather than the debtor.  *See In re Roche*, 361 B.R. 615, 622 (Bankr. N.D. Ga. 2005) ("When a creditor receives actual notice of the filing of a case, the burden is on the creditor to ensure that the automatic stay is not violated.").  Placing the onus to uphold the bankruptcy stay on creditors furthers the bankruptcy court's goal of orderly administering the entirety of an estate as to each of a debtor's creditors.  *See id*. (recognizing that a "creditor's right to adequate protection must be balanced with an orderly administration of a bankruptcy estate").  Accordingly, Defendants' decision to retain control over property of the bankruptcy estate constituted a technical violation of § 362(a)(3), regardless of Mr. Irby's communications.

Mr. Irby's communications evidencing an intent to surrender the vehicle and threats regarding the vehicle's unlocked state, however, are not unimportant and should be taken into account by the Bankruptcy Court during a hearing on

damages. As highlighted by United States Bankruptcy Court for the Northern District of Alabama:

> [A] debtor is precluded from obtaining an award pursuant to 362(h) of the costs, expenses and attorney['s] fees incurred or generated as part of the process of prosecuting a section 362(h) proceeding where the debtor: (1) was not injured by a creditor's stay violation; (2) has not incurred damages as a result of a creditor's stay violation prior to the institution of a section 362(h) proceeding (3) does not stand to incur any damages as a result of a creditor's stay violation . . . ; or (4) was not required to institute the section 362(h) proceeding in order to force the creditor to desist from further violating the stay, or to prevent the creditor from again violating the stay, or to undo the effects of the creditor's stay violation.

*In re Hutchings*, 348 B.R. 847, 901–02 (Bankr. N.D. Ala. 2006). Accordingly, the Bankruptcy Court is left to consider Mr. Irby's actions, specifically whether he baited Defendants into violating the stay and/or failed to mitigate his damages, when determining whether damages are appropriate and if so, the amount warranted.

Because Defendants' actions amount to a technical violation of § 362(a)'s automatic stay, the judgment of the Bankruptcy Court in favor of Defendants must be vacated and the case remanded for a hearing and determination on damages in accordance with this memorandum opinion.

B.    **The Evidence Offered by Mr. Irby**

In light of the foregoing analysis and the court's determination that Defendants engaged in a technical violation of § 362(a)'s automatic stay, it is

16

unnecessary to further address Mr. Irby's contentions regarding the sufficiency of the evidence presented as to Defendants' liability.

## C. The Timing of the Judgment

While the Bankruptcy Court's order entering judgment in favor of Defendants is due to be vacated in accordance with this memorandum opinion and order, the Bankruptcy Court's order setting aside the entry of default is due to be affirmed. The record is clear that the Bankruptcy Court set a hearing on the merits for June 9, 2014. It was not reasonable for Mr. Irby to conclude that an entry of default by the Clerk of the Bankruptcy Court entered after the filing of Defendants' answer would be sufficient to determine liability and limit the scope of the June 9, 2014 hearing to damages. This decision is further supported by Mr. Irby's failure to contest the decision of the Bankruptcy Court to go forward with a hearing on the merits or request a continuance during the June 9, 2014 hearing.

## V. CONCLUSION

In accordance with the foregoing analysis, the Order and Judgment of the Bankruptcy Court is AFFIRMED in part and VACATED and REMANDED in part as follows:

1. The Bankruptcy Court's order setting aside the entry of default is AFFIRMED;

2. The Bankruptcy Court's judgment in favor of Defendants is VACATED; and

3. The case is REMANDED for a hearing and judgment on damages.

DONE this 12th day of May, 2015.

                                          /s/ W. Keith Watkins
                                 CHIEF UNITED STATES DISTRICT JUDGE